No. 15,949.

SOMMERS *v.* WILSON.
(203 P. [2d] 487)

Decided February 14, 1949.

Messrs. MUNSON & KREAGER, for plaintiff in error.

Mr. FRANK D. ALLEN, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error will be referred to as Sommers, defendant in error as Wilson. Sommers, the owner of two quarter sections of land in Washington County, Colorado, on which Wilson had been a tenant for about fifteen years, on March 9, 1946, wrote Wilson the following letter:

Exhibit A.

"I have contracted to sell the two quarters of land which you have been renting and possession to be given soon.

"I have reserved for you the ownership of the fencing, a part of which you erected and part of which belongs to me. I would like you to write me and tell me what settlement you should make for the part of the fence which you used in refencing.

"You still have an opportunity to buy this by return mail, if you so desire. $800.00 per quarter—one-half down and balance at 5% three years.

"If you do not want the place, then this is your notice of sale as of this years seasonal change.

"Thanks and I am,

"Yours very truly,
"H. M. Sommers."

On March 23, 1946, Sommers, a resident of Colorado Springs, Colorado, drove to the ranch of Wilson in Washington County, ostensibly for the purpose of seeing him about the offer of sale. Wilson was not at home and Sommers left the following note, which is Exhibit B, on the dining room table in Wilson's home:

Exhibit B.

"Saturday, 12:30 noon.

"Mr. Wilson:

"I am sorry not to find you at home for I have come up here today to tell you that if you want to buy the two ¼ sections that I have been holding them all week trying to get here to let you have refusal of them at $5.00 per acre—$800.00 each—$1600.00 for the two.

"I have an offer and buyer is anxious to close. Have received a deed from him ready to sign. The abstracts are at the Abstract Company in Akron, and they have been accepted and approved by the agent for the buyer. I have protected you on the fence and the windmill and well casing and have told them that you are first to have

the refusal, so now I must insist and ask you to call me by phone on Sunday or not later than Monday night. Call me at M5190 Colorado Springs any time tomorrow Sunday and if I am not there they will know where to find me. Call before 3 P. M. for I will out after that.

"I am leaving now going west toward Wagon Wheel and back to Colorado Springs. Will ask for you at neighbors west of here.

"Very truly yours,

"H. M. Sommers.

"Colorado Springs, Main 5190
or Main 4104 on Monday.

"If you want to check the abstracts you may do so for I think they are at the Abstract Office in Akron."

March 23 was Saturday, and Wilson returned home late in the evening and found the note and, having no 'phone, he waited until Monday, March 25, and went to Akron; on going into the Citizens National Bank of Akron, he learned that Sommers had telephoned to the bank. Wilson had written a letter to Sommers on March 23, which is Exhibit C, and is as follows:

Exhibit C.

"Cope, Colorado, March 23, 1946.

"Mr. H. M. Sommers
226 N. Tejon St.
Colorado Springs, Colo.

"Dear Sir:

"Since talking with you by phone the other day I have not heard anything from you relative to the sale of your land here, I am wondering if you have decided to sell it to me at the price offered, and if you have advised the Citizens National Bank as we talked.

"If you have decided, will you please be good enough to either write me direct to take it up with the Citizens National Bank of Akron, Colorado, at the earliest date possible.

"Yours very truly,

"Burt C. Wilson."

On learning that Sommers had telephoned the bank on Monday, March 25, Wilson arranged with the bank and requested the bank to send Sommers the following wire:

Exhibit D.

"Akron, Colorado, March 25th, 1946.

"H. M. Sommers,
226 North Tejon St.,
Colorado Springs, Colorado.

"Your proposition of sixteen hundred dollars accepted by Burt C. Wilson. He has deposited money with us. Abstracts have been returned to King Land Co. Have abstracts returned here and make deed to Burt C. Wilson and forward for collection.

"Citizens National Bank."

Sommers refused to go through with the deal, apparently uncertain as to his situation with others with whom he had some negotiations concerning the sale of the land. Wilson, on April 15, 1946, filed his complaint for specific performance in the district court of Washington County. The hereinbefore quoted exhibits constitute the contract upon which he relied. A petition in intervention was granted and the intervener participated in the trial, at the conclusion of which, the court found that the intervener had failed to show any contract and was not entitled to specific performance or damages and the intervener's cause was dismissed. The court found that Wilson had established a contract for purchase of the land which should be performed and the court so ordered. From that order and judgment, Sommers prosecutes this writ.

Briefly summarized, Sommers contends, and so specifies, that there was no meeting of the minds of the parties with respect to the terms of the sale upon which specific performance is asked; and further contends that the evidence supports his contention. Sommers testified that he intended to reserve one-half of the mineral

rights connected with the land involved and that in Exhibit B, the note that he left on Wilson's table, wherein it is stated "* * * so now I must insist and ask you to call me by phone on Sunday or not later than Monday night. Call me at M5190 Colorado Springs any time tomorrow Sunday and if I am not there they will know where to find me. Call before 3 P. M. for I will be out after that. * * *," that he wanted to talk to Wilson about the details of the transaction and the mineral rights.

Wilson testified that he placed a call for Sommers on Monday but failed to get him and he then accepted Sommers' offer by the telegram herein set out and is Exhibit D.

Before Sommers could successfully contend that there was no meeting of the minds or an offer made and accepted, he would have to establish that the words just quoted from Exhibit B constituted an absolute condition which should be met before the offer could be said to be complete.

Care should be taken, however, in interpreting offers, to make sure whether the offer does impose an absolute condition as to time, place or manner of acceptance, or whether the words employed merely suggest a method which would be satisfactory to the offerer. Considering all of the exhibits and their relation to each other, together with the testimony of the parties hereto, we are of the opinion that the exhibits constitute a contract that is mutually binding, as well as mutually enforceable. Sommers had full opportunity by and through his own letters to go into the matter of mineral rights but failed to do so. He did detail other matters concerning the fence and windmill, but was silent as to the matter of mineral rights on which he attempted to stand at the trial and now insists upon before this court.

All through Sommers' testimony he indicated a desire at all times to give his tenant, Wilson, the first opportunity to buy in case of a sale. In our opinion, Sommers

made an offer to Wilson to sell his lands which as to price and terms was accepted by Wilson through the telegram, Exhibit D. This telegram of acceptance did not change, add to or qualify the terms of the offer. Sommers, through this acceptance by Wilson, would clearly receive what he desired as an ultimate object.

The record fully justifies the order and judgment of the court and that the discretion of the court was properly used and not abused. The judgment should be affirmed and it is, therefore, so ordered.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE STONE concur.